I want to open up by acknowledging the presence of the government's counsel here, Mr. Boyle. They do not, the government does not appear in these long, short cases very often unless they recognize that the issues here are policy issues and go beyond what the case itself, and that is certainly true from the briefing. What we have done here, what we're attempting to do is invite the Fourth Circuit to adopt a now longstanding rule in the Fifth Circuit and in the United States Supreme Court, but now a longstanding rule in the Fifth Circuit involving how a claim should be analyzed by administrative law judges, a secondary injury claim. A secondary injury claim being not the one, if I walk up and hurt myself right, my knee right now, that's a primary injury because it occurred in the course and scope of employment. Six months later, if I claim a back injury and I say it came out of that primary injury, that's now called a secondary injury by the Fifth Circuit. And the burden of proof then shifts because the first, or the burden of proof, the standard shifts. The first, an injury to my knee is analyzed by utilizing the presumption it is a prima facie case. Are there working conditions which could cause the harm? And that would be the carpet or me walking up or me talking. Well, on a secondary injury, what the Fifth Circuit has held is that the standard is right in the statute and the standard is naturally and unavoidably. That injury, that back injury, must naturally and unavoidably result from the first injury. That's a wholly different standard. And that standard is conceded. The government concedes that that is the correct standard here. Mr. Stevenson concedes that's the correct standard. The ALJ and the board did not apply that standard. And how they concede it, frankly, and then don't say the case needs to be remanded, I'm not sure. I think they probably say that you guys can do some fact-finding of your own and that maybe there was enough facts if the judge had done that analysis. It's going to need to make a difference in the outcome of this case. I'm sorry? Which you're going to need to explain to me. Well, the ALJ didn't even get there, expressly declined to utilize that standard. And now that it is a standard, and I don't know what the judge would have done, but because the judge wouldn't and the ALJ, I mean, the board would not consider it under that standard. Doesn't part of your argument have to be that the result would be different? No, I think the part of my argument is that it needs to be remanded to the court and have the court, not you guys, have the finder of fact analyze the case under that standard. And that's, I mean, I think that's certainly what we're saying here. But since that part is conceded, that that is the standard, then it gets down to the presumption, which is the more difficult case, the difficult situation. The Fifth Circuit in Amaretta, Hess, and Vickers has, in 2008 and 2013 now, have made it clear that at least in that circuit, the 20A presumption, which is a big, heavy presumption, does not apply to these secondary injury cases. It falls out. It doesn't apply. That comes from the United States Supreme Court's decision in U.S. Industries, which this court recognized in Universal Maritime. And what U.S. Industries said way back in 1982, and it's really just bubbling up here now, what they said was that the presumption does not apply, only applies to injuries that occur in the course of employment, course and scope of employment. Course meaning temporarily that occur as I'm walking up, when my knee goes out. That's the only time the presumption applies. Well, the text of the statute talks in terms of a claim. So why isn't the primary claim secondary? It's also a claim. Well, claim, what U.S. Industries says is that claim, if you go back and read the word claim, claim says a claim for an injury, and that an injury must occur in the course and scope of employment. It is impossible to claim an injury that didn't occur in the court, that didn't. What happened in U.S. Industries was the man in bed the next night said, I had pain. And so he certainly couldn't, the Supreme Court said he couldn't claim that that happened at work. It didn't happen at work. It happened at home. It's the same thing with us here. What we have here is an injury which potentially happened at work, and then four years later, after the man retired, he had a thoracic injury. It did happen at work. You said potentially happened at work. His initial injury did happen at work. There was an injury. Right. It's hotly contested on the second half of this argument whether that resulted in COPD, which then resulted in the steroid use, which then resulted in coughing and the thoracic injury. All that is hot. That's what I meant by that. There's a second part to that argument. But the point being is that the presumption only applies to the original claim, that one you're talking about. It applies to my knee. I hate to say it, but that's what the Supreme Court says. That's what U.S. Industries says. That's the law. And Amaretta Hess and Vickers in the Fifth Circuit have picked that up and said, yeah, that's the law. And, you know, there are lots of reasons why it might or might not be, but that's it, I think. I think that's pretty straightforward. Throughout your brief and your argument, you reference naturally and unavoidably as the test. But the statute and the case law, they actually say naturally or unavoidably. Does that impact your argument? No. I think it's naturally and unavoidably. It's not. Okay. And I apologize. Or. Or. Either way, either way, this circuit, I mean, the administrative law judge did not apply and refused to apply or or and. Wouldn't get into it and then applied the presumption, which is which is patently improper here. And the the director on this presumption issue conceding the naturally or unavoidably issue, the director concedes that and simply says on the Fourth Circuit does not. I mean, the Fifth Circuit situation does not distinguish the Fifth Circuit cases, just says that they are, and I quote, wrongly decided. So the government has placed it very straightforwardly. This is either the Fifth Circuit was either this Fourth Circuit adopts the Fifth Circuit or not the way that they're saying it. It is just decided wrong or not without distinction. Now, there is the second situation, which is whether or not the COPD, which is not a secondary injury. This man had a pre-existing COPD. He inhaled some welding fumes, and it potentially exacerbated the COPD such that he was permanently disabled later and needed medical treatment. We contested that and said that, no, that's not, that was not true, that it did not, it was a natural progression. And there was only one witness who testified about that, and that's this Dr. Ripoll, who was a pulmonologist. And he testified, he said once that it was related. He said second, it wasn't. He said third, it was, was, wasn't. He took a deposition and said, I don't know. He really did. He said, I don't know. And that evidence, and the evidence went in on that. What, in that particular case, now, when I talk about the T7 fracture, we're talking about the COPD, that is a primary injury. The presumption would apply to that. And our, our position there is that, is that the prima facie, this, the prima facie case requires some, now this is all, let me tell you, there's a scurry part to this, in that the administrative law judge, when he analyzed the prima facie case, said we had stipulated to the prima facie case. We had stipulated to the injury and the, and the aggravation. We had not. We complained mightily about that. The, the Benefits Review Board agreed that we had not stipulated. Both, all parties here say we had not stipulated. But, so, so it's very difficult to, to, to argue what the ALJ might have done had he not found stipulation. The case, frankly, ought to be remanded simply on that, on a, I don't, the board should have remanded on said, make a finding. But, it can be fairly said that the board, I suppose, found, in its fact-finding mode, found that the prima facie case had been reached through the testimony of Dr. Ryapol one of the times that he said it was related. I, I suppose they did that. But then, if that's true, then the question comes as to, Dr. Ryapol also said it wasn't related, and also said he didn't know. And all of that is doubt. And the, the position that, that we're asking, the, the Fifth Circuit, in its Plaisance case, says that it's sufficient for the employer to throw factual doubt on, on, on an argument. That, that the, the prima facie case is rebutted if you can throw factual doubt. That's their, their view of it. And, and I think a doctor who says, yes, no, maybe, so, over and over again, is throwing factual doubt. And at that point, the ALJ should find, should, should view the evidence as a whole. One thing we do not have here, across the board, is the evidence ever viewed as a whole. It's all prima facie case, not rebutted. Therefore, employer loses. In, in our view, that is, that there is, I'm going to do this now, in terms of that. Counsel for Mr. Stevenson, Greg Camden, found a case this morning. And gave, I mean, and gave it to me 20 minutes ago. He's going to give it to you guys. It's an unpublished Fourth Circuit opinion. It's got, Judge Traxler, you were in it. It's McLean Contracting Company versus Midkiff. 1999 case, I'm sure you remember it. I have read it, and it, I do not believe it, it changes the situation. It does, it does seem, it, it, it does not reference U.S. Industries. It was decided before Amaretta, Hess, and Vickers in the Fifth Circuit. It was, it was a man who had a cut, and then he. They just found a 1999 case.  Unpublished, unpublished. And I know he's going to raise it, and I, and I, you know, and I just want to make sure that I let the court know that you can read it. It says, it's primary, it's primary, it was written by Judge Luttick, I think. But it's primary, yes, it was primary thrust was that Greenwich Collieries, do you all remember Greenwich Collieries is the true doubt, was the one, it's the case that came out of the Supreme Court and said that if in doubt, in these cases, a tie goes to the employer. The burden of proof always remains with the claimant. That's the true doubt rule in the long story now. And that the argument here was that Greenwich Collieries basically threw the presumption out all, completely. That was the argument in McLean. And we, I don't think that Greenwich Collieries did that, and that's what the, and that's why I don't think that this 1999 case is, is applicable. Back to your U.S. Endurance case, did it even mention secondary injuries in that case? It, it, the word secondary injuries has not, had not come into the lexicon yet. The Fifth Circuit did that. It was a secondary injury, and the man, the man was at home, and it's, it's a screwy fact situation, but the man was at home and cried out in pain from his bed. He said, I hurt, I hurt. And then he said that it occurred from work. That's, that's sort of the classic secondary injury. And the U.S. industry said in that situation, since, since it's not, since the injury did not occur, he's not claiming that it occurred in the course of his employment, during his employment, that the presumption does not apply. So, it didn't use the word secondary. The Fifth Circuit picked that up, and they now have, are using primary and secondary as, as terms of art in that regard. But, yes, the U.S. industries did, was a secondary injury case. And I think it's, I mean, I don't, I don't see how you get around it, frankly. I, are there any other questions? I reserve my time. Thank you very much. Thank you. Mr. Camden. Gregory Camden on behalf of Ms. Stevenson, the wife of the deceased who was claiming this matter. I have just found a case, and if I can explain. I was reading briefs over again and realized nobody had addressed the burden of proof for naturally or unavoidably. I did a Google search of that in the coffee room here in the courthouse today. And this case was the first one that popped up. It is unpublished. It was written by Justice Ludig. You were a member of the panel, Your Honor, Justice Traxler. I have copies of it if you'd like it today. If the employer feels they need time for a supplemental brief, I would agree to anything. It was found completely by accident, and I apologize for the late submission. It is on point, though, with what we have today. Another thing, in that decision, it never- So what does it say? In this case, a gentleman was working for, and excuse me, I've just read this morning, McLean Contracting Company. He got a scrape to his leg. It bled through his pants, but no big deal. He went on with work. That weekend, he was working with his son out in the James River, and he developed some kind of bacterial infection. And the employer alleged that it was due to the being in the James River, not due to the cut on the leg. So in essence, they were talking about whether this infection was a secondary injury, even though they did not use that term. Justice Ludig indicated in order to rebut the Section 20 presumption, an employer must offer substantial evidence that an intervening cause was responsible for the harm to the employee. So Justice Ludig put the burden on the employer to prove that the incident naturally or unavoidably flowed from the injury, or did not, actually. So the case is on point with what we're dealing with today. And I think that's something Your Honor addressed already. What does the employer's argument change in the outcome in this case? The naturally or unavoidably standard, and I kept writing and, so thank you for correcting me on that, clearly says that it applies to intervening events following the injury. There's a burden that it naturally or unavoidably flow from it. The employer in this case has never alleged any intervening event or factors that would have contributed or severed the causation issue. Everything the employer has alleged preexisted the injury. And all of that goes to the aggravation rule, not whether it naturally or unavoidably flowed from the injury. As the solicitor indicated in their brief, if the Fourth Circuit's decided before, then ALJ's decision is sufficiently clear so long as the reviewing court can see what ALJ did and why he did it. In this matter, the ALJ saw no evidence of an intervening event. So there was no reason for him to address the naturally or unavoidably in those terms. He merely addressed it as a Section 20A presumption case, found that the claimant had raised a prima facie case, that the employer did not provide substantial evidence to the contrary, and ruled in the claimant's favor. There were also questions by the court regarding what a claim is. I'd like to point out that Section 907 of the Long-Term Workers' Compensation Act specifically addresses medical benefits for an injury. And that section uses the term claim, referring to medical benefits. Specifically, this is at 907D2. Quote, no claim for medical or surgical treatment shall be valid, and then it goes on to explain the circumstance of that. They're using the word claim for medical benefits. Anytime a claimant requests additional benefits, that is a claim. So when the claimant made the claim for the T7 fracture, that was indeed a claim. In fact, the Department of Labor Office of Workers' Compensation Programs, who are charged with the initial proceedings in these cases, held an informal conference between the parties, and they drafted a memorandum of informal conference regarding what was discussed at that. And in the memorandum of informal conference, there is a box labeled, quote, the present claim. And in that box, the Department of Labor representative went on to describe everything the claimant was alleging on that date, including the T7 fracture and the treatment by Dr. Jamali. So clearly, the Department of Labor Office of Workers' Compensation Programs saw this secondary injury, if you want to call it that, as a claim for compensation. Well, if they're both alleged. And they were both. In this case. And they both were alleged in this case, Your Honor. So we go back to the plain meaning of the statute, Section 928A. Quote, in any proceeding for the enforcement of a claim for compensation under this Act, the secondary injury was a claim for compensation under the Act, and therefore the Section 928A presumption applies to the claim. If there are no further questions. Okay. I think we understand your argument, Mr. Boyle. Thank you, Your Honor. Mr. Boyle. Thank you, Your Honor. May it please the Court. Your Honor, the petitioner's primary argument in this case is that the Section 928A presumption does not apply to the T7 fracture because the employer argues the presumption doesn't apply to secondary injuries. Now, the problem with that, as Judge Floyd pointed out, is that the Section 928A presumption doesn't apply to injuries at all. It applies to claims. Section 928A doesn't even mention the word injury, much less restrict its presumption to a claim that arose out of some specific category of injury. By its terms, Section 928A applies to claims. There's no dispute in this case that Mr. Stevenson filed a claim for his T7 fracture. So based on the natural language of Section 928A, that claim is entitled to the Section 928A presumption, that it falls within the provisions of the Act. Now, that's what distinguishes this case from the U.S. Industries case, from the Hess case, and the Vickers case. And I will take issue with what Mr. Villaselli said, that we did not try to distinguish Hess and Vickers. There's an entire section of our brief that specifically did. And the reason all three of those cases are factually distinguishable is because in those cases, the courts found that there was no claim made for the secondary injury. In fact, the holding of U.S. Industries is that the presumption does not apply to a claim that has never been made. Now, Judge Floyd, you asked whether there was a secondary injury in the U.S. Industries case, and there is not. There's not even a primary injury in the U.S. Industries case. What happened in that case was the claimant filed a claim alleging that he actually had an injury at work. That was the only claim he made. When it got up to the Court of Appeals, the ALJ said, that never happened. You're lying. You never had a workplace injury. When it got up to the Court of Appeals, the Court of Appeals said, well, maybe that injury didn't happen, but you had this attack of pain the next day while you were lying in bed. We're going to apply the presumption to that. And the Supreme Court said, you never even made a claim for that. You can't apply the presumption to something that has never been claimed. So that was the whole thing of U.S. Industries. There is no secondary injury because a secondary injury, as we've discussed here, is one that arises naturally or unavoidably from a primary injury. And if there is no primary injury because the ALJ didn't believe one happened, there cannot, by definition, be a secondary injury. Now, the Board found here that Mr. Stevenson made an effective claim for his T7 fracture. The courts in Hess and Vickers found that the claimants in those cases did not make effective claims for their secondary injuries. They effectively found that those secondary injuries weren't, just weren't part of the claim. And because the presumption applies to the claim, they couldn't apply the presumption to those secondary injuries because they just simply weren't part of the claim. That's what distinguishes this case from Hess, Vickers, and U.S. Industries. Now, Hess and Vickers went a step further than U.S. Industries and said what U.S. Industries held was that the presumption cannot apply to secondary injuries. Now, as I just said, given that there was no secondary injury in the U.S. Industries case, the Supreme Court could not have possibly said that it doesn't apply to secondary injuries. What they said was it doesn't apply to a claim that has never been made. So that is the difference between those cases and this case. So Hess and Vickers taking U.S. Industries and extending to that is not based on U.S. Industries, and it's not based on Section 20A because Section 20A says the presumption applies to all claims. And you can clearly make a claim for compensation based on a secondary injury. Now, the employer's second argument about the T7 fracture is that the ALJ did not specifically say, I hereby find that this was a natural and unavoidable result of the claimant's COPD aggravation. Now, I'll go back a little bit here. There's no dispute that the COPD aggravation happened, Your Honor. This is the primary injury. It happened in 2008. The claimant was in the hospital for eight days as a result. He was diagnosed with COPD aggravation, and the employer actually paid him compensation for total disability for six months based on that primary injury. So there's no question that that primary injury happened. What the ALJ found was that primary injury happened, it exacerbated his COPD, and the COPD causes excessive coughing and requires steroid use, which resulted in a T7 fracture. So even though the ALJ didn't say, quote, this is naturally or unavoidably resulting from the chronic COPD, he effectively found that. Sending this case back for him to find exactly the same thing in slightly different language simply doesn't make any sense. Now, the employer's final argument goes to Mr. Stevenson's COPD aggravation, the primary injury. The employer, as he said, concedes that the presumption applies to that injury, but he says that the ALJ applied it incorrectly. Specifically, he argues that the ALJ relied on Dr. Reupel's opinions to invoke the presumption but found those same opinions insufficient to rebut the presumption. There's two problems with that argument, Your Honor. The first problem is that, if you look at the record, the ALJ did not rely on Dr. Reupel's opinions to invoke the presumption. He simply said, everybody agreed that Mr. Stevenson was exposed to fumes at work, and I find that that- I couldn't hear that last part. You lowered your voice. I'm sorry. Could you repeat that, please? Yes. The ALJ did not rely on Dr. Reupel's opinions to invoke the presumption. He simply found everybody stipulated that this workplace incident happened, that he was exposed to the welding fumes. And he independently found that the exposure could have caused an aggravation of the COPD. Now, Mr. Bilasoli is saying that the ALJ found that they had stipulated to the COPD aggravation, and they're saying they didn't stipulate to it. The board agreed that they didn't stipulate to it and found that it didn't matter anyway, because all you need is a harm and something at work that could have caused that harm. And that was enough, and that was what Mr. Stevenson showed. Now, the other problem with invoking the presumption at this point is that the employee didn't need the presumption for the COPD aggravation at this point in these proceedings, because, as I said, the employer had already conceded that the COPD aggravation had occurred and had paid total disability for it for six months. Now, to have the employee have to go back, all they're arguing now is we shouldn't have to keep paying medical benefits for the COPD aggravation, because we think this arises from his original COPD, not from the aggravation of the COPD. But that doesn't mean that the employer has to go back to the beginning and say, okay, I'm going to show you again that I had an injury at work and that the conditions at work could have caused it. He already did that. The employer already conceded it by paying the claim for six months. So the COPD aggravation and the invocation of the presumption, frankly, I think is a non-issue, Your Honor. And I also believe that the Fifth Circuit is wrong in their application of the 28 presumptions, saying that it does not apply to secondary injuries. Does the Court have any questions? Thank you. Thank you. Mr. Bilasoli. Yes, sir. I'll be brief. You did hear, though, that there's not an issue in terms of the fact that the naturally or unavoidably standard should apply. That is the standard that applies to this injury. Everyone agrees to that. Everyone also agrees that the ALJ did not do that here. It is not, I don't think, your function to decide whether the evidence naturally or unavoidably. I don't even know what naturally or unavoidably really means. It hasn't been fully litigated. What does it take for a claimant to prove that, that something is unavoidable? That's something that the lower courts need to work out and bring back up to you all, not just sort of say it like the Benefits Review Board did. Oh, well, it seems like it's enough. This is a serious standard, and the ALJ ought to, and everybody agrees, ought to review these secondary injuries in that way. You also heard the Director say that the Fifth Circuit is wrong. Now, that's straightforward. They're not arguing really there's any distinction here. What the Fifth Circuit did is take U.S. Industries, the U.S. Industries rule, and say that means that the presumption does not apply to secondary injuries. That's what the Fifth Circuit said. That's conceded over here. That's what the Fifth, and wrong. Now, we think it's right. We think the weight of the case law, if you're just dealing with case law, there is no countervailing case law. That's what the two panel decisions that are straightforward on it. There's not anything that's in the statute. There's the two Fifth Circuit cases on the Supreme Court. That's pretty simple. If we're dealing with precedent, I'm on pretty solid ground. And I also believe that you can read those opinions and make, and certainly this Court will make its own decision as terms of whether U.S. Industries ought to be extended. I believe if you read U.S. Industries, it's in there. It's quite clearly in there. It's a, it is, it was a, they just didn't know to call it a secondary injury yet, but Fifth Circuit did. And I would ask this Court to do the same. Thank you. Thank you very much.
judges: William B. Traxler Jr., Henry F. Floyd, Stephanie D. Thacker